**Mary R. YATES, et al., Plaintiffs,**

v.

**UNITED STATES SOLDIERS' AND AIRMEN'S HOME, et al., Defendants.**

**Civ. A. No. 81–1272.**

United States District Court, District of Columbia, Civil Division.

March 8, 1982.

**462**

Charles Rosenbleet, Washington, D. C., for plaintiffs.

Stuart E. Schiffer, Charles F. C. Ruff, Paul Blankenstein, and Mark A. Chavez, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

CORCORAN, District Judge.

Before the Court is defendants' motion to dismiss or, in the alternative, for summary judgment.

The defendant argues that the Court lacks jurisdiction over this action which alleges a breach of a collective bargaining agreement between a union and an agency of the U. S. Government.

Plaintiffs contend that an adequate jurisdictional basis is found in 28 U.S.C. § 1346(a)(2), which authorizes Federal District Courts to hear disputes involving contracts to which the Government is a party.

For the reasons stated below, we agree with the defendants.

**1.** The collective bargaining agreement provides for a 5 step grievance procedure culminating with an arbitration proceeding. *See*: Negotiated Agreement, Article XXII, Section 7. (Defendants' Exhibit 3).

**2.** The grievance mechanism provides the following time limits:

*Background*

This is an action against the United States Soldiers' and Airmen's Home (Home) initiated by a former employee, Mary Yates, who was discharged and a present employee, James Brunner, who was temporarily suspended from employment. The complaint alleges that the defendants breached the collective bargaining agreement between the Home and the plaintiffs' labor union by refusing to accept grievances filed by plaintiff Yates concerning her discharge and plaintiff Brunner concerning his suspension. The plaintiffs seek monetary relief and an order requiring the defendants to process plaintiffs' grievances through the grievance/arbitration mechanism provided in the labor agreement.[1]

Plaintiff Yates was notified on November 19, 1980, that she was to be discharged from her position at the Home, effective November 24, 1980, for soliciting and accepting funds from a Home member. She submitted a request for a grievance hearing concerning her discharge on December 4, 1980. Her request was rejected by the defendant as untimely.[2]

Plaintiff Brunner was notified on February 13, 1981, that he would be suspended for 10 days, effective February 23, 1981, for misconduct and insubordination. Brunner did not immediately submit a grievance over his suspension. However, he did request an extension of time within which to file a grievance on February 26, 1981. As with Yates' request, the defendant rejected Brunner's request as untimely.

Plaintiffs contend that the defendants refusal to process their grievances is a violation of the collective bargaining agreement, and have requested the Court to award them the appropriate relief. Defendant, as noted, challenges the jurisdiction of the Court.

"The grievance procedure shall be invoked with 7 working days of the occurrence of the incident giving rise to the grievance of within 7 working days of the aggrieved becoming aware of the grievable situation"
*See*: Negotiated Agreement, Article XXII, Section 7.

## Discussion

The authority of an agency of the U. S. Government to enter into a collective bargaining agreement with a labor organization derives from the Civil Service Reform Act of 1978 ("Act"), 5 U.S.C. § 7101 *et seq.*[3] The Act is a comprehensive scheme governing labor relations within the federal civil service. It was modeled, in part, after the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151 *et seq.*, which governs labor relations in the private sector. *See:* H.R.Rep.No. 95–1403, 95th Cong., 2d Sess. 41 (1978); S.Rep.No. 95–969, 95th Cong., 2d Sess. 106 (1978), *reprinted in* 1978 U.S.Code Cong & Ad.News 2723, 2828; *Dept. of Defense, etc. v. FLRA*, 659 F.2d 1140 (D.C.Cir.1981).

In addition to authorizing collective bargaining in the public sector, the Act establishes the Federal Labor Relations Authority ("FLRA"), 5 U.S.C. § 7104, the powers of which are analogous to those of the National Labor Relations Board ("NLRB"). 5 U.S.C. § 7105; *U. S. v. Professional Air Traffic Controllers*, 653 F.2d 1134, 1139 (7th Cir. 1981). The Act also establishes a code of unfair labor practices 5 U.S.C. § 7116; it empowers the FLRA to take action to prevent unfair labor practices, 5 U.S.C. § 7118; and it outlines certain grievance procedures which must be included in any collective bargaining agreement, 5 U.S.C. § 7121. An employee aggrieved by agency action has the option of either filing an unfair labor practice charge with the FLRA, or pursuing the matter through the grievance mechanism in the collective bargaining agreement. He may not, however, resort to both procedures. 5 U.S.C. § 7121(d). Among the mandatory grievance procedures, to be included in all labor agreements, are provisions requiring that issues of arbitrability be resolved by resort to the grievance mechanism, 5 U.S.C. § 7121(a)(1), and that all unresolved grievance be submitted to binding arbitration. 5 U.S.C. § 7121(b)(3)(C). Challenges to an arbitrator's award are to be resolved, in the first instance, by the FLRA, §§ 7105(a)(2)(H), with judicial review of the FLRA's decision in the Court of Appeals. 5 U.S.C. § 7123(a).

Noticeably lacking in this complex statutory scheme for the resolution of grievances is any mention of involvement by a Federal District Court. The defendants contend, and we agree, that the absence of a jurisdictional grant in the Act is a clear indication that Congress intended to bar actions to enforce collective bargaining agreements in the district courts.

The failure of Congress to provide a clear jurisdictional grant to district courts over disputes involving public sector labor agreements is particularly telling when compared with the approach taken by Congress in the private sector. Section 301 to the Labor Management Relations Act, 29 U.S.C. § 185(a), grants the federal courts original jurisdiction over "suits for violation of contracts between an employer and the labor organization representing [his] employees."[4] Section 301 operates as a limited exception to the NLRB's otherwise exclusive jurisdiction over private sector labor disputes, and permits a party to seek judicial relief for breach of a labor agreement, without prior resort to the NLRB. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *Smith v. Evening News Ass'n*, 371 U.S. 195,

---

**3.** Prior to the effective date of the Act, labor-management relations in the federal service were governed by Executive Order 11491, as amended. 44 Fed.Reg. 18923 (1979). The Executive Order authorized federal employees to join labor organizations, and to negotiate, through their labor representative, a collective bargaining agreement with their federal employer. *Id.* §§ 7, 10(a), (e), 11. Any negotiated agreement had to include procedures for the consideration of employee grievances. *Id.*, § 13.

**4.** Section 301 provides:

(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined by this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without regard to the citizenship of the parties.

*Id.*

83 S.Ct. 267, 9 L.Ed.2d 246 (1962); *United Steel Workers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The grievance/arbitration procedures contained in private sector collective bargaining agreement may be enforced directly in district court under § 301. *Hines v. Anchor Motor Freight*, 424 U.S. 554, 562, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976).

The Civil Service Reform Act of 1978 contains no provision analogous to § 301. Not only is that Act silent on the point, but the legislative record indicates that Congress did, in fact, consider and reject a proposed provision similar to § 301 when it enacted the Act. *National Federation of Federal Employees, Local 1263 v. Commandant, Defense Language Institute*, 493 F.Supp. 675, 681 n.13 (N.D.Cal.1980).

The House version of the Act, § 7121(c), authorized any party to a collective bargaining agreement to seek enforcement of the grievance/arbitration provisions in district court.[5] H.R.Rep.No. 95–1403, 95th Cong., 2d Sess., 286 (1978). Section 7121(c) as adopted by the House read:

> Any party to a collective bargaining agreement aggrieved by the failure, neglect, or refusal of the other party to proceed to arbitration pursuant to the negotiated grievance procedure provided in the agreement may file a petition in the appropriate United States district court requesting an order directing that arbitration proceed pursuant to the procedures provided therefor in the agreement. The court shall hear the matter without jury, expedite the hearing to the maximum extent practicable, and issue any order it determines appropriate.

*Id.*

The Senate version of the Act contained no such jurisdictional grant to the district courts. The Conference Committee rejected the jurisdictional grant in the House version of § 7121(c), concluding that "[a]ll questions of this matter *will be considered in the first instance by the [FLRA]*."[6] (emphasis added) H.R.Rep.No. 95–1717, 95th Cong., 2d Sess., 157 (1978). The Senate version of § 7121(c) was ultimately enacted. 5 U.S.C. § 7121(c).

Thus, the Act's enforcement scheme provides no avenue for intervention by district courts. The Congressional rejection of the House version of § 7121(c), which eliminated any means for invoking district court jurisdiction, makes it clear that Congress intended that disputes involving the interpretation and enforcement of collective bargaining agreements be resolved through the grievance/arbitration machinery,[7] with review "in the first instance by the [FLRA]." H.R.Rep.No. 95–1717, 95th Cong., 2d Sess., 157 (1978). *National Federation of Federal Employees, Local 1263 v. Commandant, Defense Language Institute, supra.* Where, as here, Congress has established a compre-

---

**5.** The House offered the following explanation of the proposed § 7121(c):

Subsection (c) of section 7121 provides that either party to an agreement may seek to compel the other to proceed to arbitration by filing a complaint in the appropriate U. S. district court, or in any appropriate court of a State, territory, or possession of the United States. The court shall hear the matter without a jury in an expedited manner and shall decide whether to issue an order directing that arbitration proceed under the terms of the agreement.

*Id.* at 56.

**6.** The full text of the Conference Report on § 7121(c) is as follows:

D. SUITS IN DISTRICT COURT

House section 7121(c) authorizes any party to a collective bargaining agreement to directly seek a District Court order requiring the other party to proceed to arbitration rather than referring the matter to the [FLRA]. The Senate has no comparable provision. The House recedes. All questions of this matter will be considered at least in the first instance by the [FLRA].

*Id.*

**7.** The Act defines "grievance" as any complaint concerning "the effect or interpretation, or a *claim of breach, of a collective bargaining agreement.*" 5 U.S.C. § 7103(a)(9)(C)(i) (emphasis added). Moreover, § 7121(a) provides that the grievance/arbitration mechanism contained in the labor agreement "shall be the *exclusive procedure* for resolving grievances which fall within its coverage." (emphasis added). Thus, any alleged violation of a labor agreement can be pursued through arbitration, and appealed to the FLRA.

hensive scheme for resolving labor disputes without intervention by district courts, we are unwilling to reach for jurisdiction under the guise of deciding a simple contract dispute.[8]

Moreover, any general basis for invoking this Court's jurisdiction has been preempted by the Act. The FLRA has held the unilateral refusal of a federal employer to process a grievance is an unfair labor practice under §§ 7116(a)(1) and (5) of the Act. *Veterans Administration Hospital, Danville, Ill.*, 4 FLRA No. 59 (9/30/80). By analogy to the private sector, we conclude that the FLRA's unfair labor practice jurisdiction over the issue preempts that of state and federal courts.[9] *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); *Clark, et al. v. Mark*, No. 79–CV–777, slip op. (N.D.N.Y., 8/27/80); *National Federation of Federal Employees, Local 1263 v. Commandant, Defense Language Institute, supra; Cf.: Smith v. Evening News Ass'n, supra; Motor Coach Employees v. Lockridge*, 403 U.S. 274, 297–301, 91 S.Ct. 1909, 1923–1925, 29 L.Ed.2d 473 (1971) (§ 301 represents a Congressionally created exception to the preemption doctrine).

The Court concludes that it lacks jurisdiction over this action. Accordingly, it is this 8th day of March, 1982

ORDERED that defendants' motion to dismiss is hereby GRANTED.

---

8. A collective bargaining agreement is "more than a contract" *United Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 578, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409 (1960). It is a part of a complex scheme governing labor relations. *Id.* Thus, plaintiffs' attempt to characterize this suit as a simple contract action under 28 U.S.C. § 1346(a)(2) is misguided.

Plaintiffs' reliance on *Larionoff v. United States*, 365 F.Supp. 140 (D.D.C., 1973) rem'd, 533 F.2d 1167 (D.C.Cir.1976), aff'd 431 U.S. 864 (1977), is also misplaced. *Larionoff* was decided prior to the passage of the Act. Its assertion of jurisdiction rested on the 1964 amendments to 28 U.S.C. § 1346(d) which eliminated

language prohibiting actions in district court for recovery of fees, salaries, or compensation by employees of the United States. Whatever the intent of Congress in amending § 1346(d) in 1964, its recent refusal to provide access to district courts for actions alleging violations of federal collective bargaining agreements is controlling.

9. Our conclusion that the Court's jurisdiction is preempted by that of the FLRA forecloses plaintiffs' invocation of the Administrative Procedure Act, 5 U.S.C. §§ 702, 703, as a basis for jurisdiction.