Efthimios A. KARAHALIOS, Plaintiff,

v.

DEFENSE LANGUAGE INSTITUTE FOREIGN LANGUAGE CENTER PRESIDIO OF MONTEREY, and Local 1263, National Federation of Federal Employees, Defendants.

No. C–81–2745 RFP.

United States District Court,
N. D. California.

July 23, 1982.

Thomas R. Duffy, Monterey, Cal., for plaintiff.

Deborah Seymour, Asst. U. S. Atty., San Francisco, Cal., Paul Blankenstein and Mark Chavez, Dept. of Justice, Washington, D. C., for defendants.

## MEMORANDUM AND ORDER

PECKHAM, Chief Judge.

### Pendent Jurisdiction

In our order dated March 9, 1982, 534 F.Supp. 1202, we ruled that we have federal question jurisdiction over plaintiff's claim that defendant union breached its duty of fair representation. As to the claim against the Defense Language Institute ("DLI") for breach of the collective bargaining agreement, however, we indicated that, as it was essentially a claim for breach of contract against the government, it fell within the Tucker Act, 28 U.S.C. §§ 1346(a)(2), 1491, so that we lacked jurisdiction over it if it were a claim for over $10,000.

▉ Apparently, plaintiff's claim against DLI is for an amount greater than $10,000. Accordingly, we lack jurisdiction over that claim. However, plaintiff now asks that we assume pendent jurisdiction over the claim so that it can be resolved in the same forum as the claim for breach of the duty of fair representation. Although we recognize that it might be more efficient to try both claims in the same forum, we must deny plaintiff's motion. The United States has not consented to be sued in the district court when a contract claim is for more than $10,000 in damages. "This court cannot, by using the judge-made doctrine of pendent jurisdiction, waive the immunity of the United States where Congress, the constitutional guardian of this immunity, has declined to do so." *Sanborn v. United States*, 453 F.Supp. 651, 655 (E.D. Cal.1977). *See also Ware v. United States*, 626 F.2d 1278, 1285–87 (5th Cir. 1980); *Lenoir v. Porters Creek Watershed District*, 586 F.2d 1081, 1087–88 (6th Cir. 1978).

Plaintiff fears that the damages issues will be unduly fragmented if the two claims are heard in separate forums. In the typical labor damages action brought by a federal employee, plaintiff's fears would be largely unfounded. Because of the manner in which damages are apportioned between the employer and the union in such cases, the employer generally pays the larger share of any damages which are awarded. A union which is found liable for breach of the duty of fair representation rarely pays more than a *de minimis* amount in damages. *See Vaca v. Sipes*, 386 U.S. 171, 196–98, 87 S.Ct. 903, 919–921, 17 L.Ed.2d 842 (1967); *International Brotherhood of Electrical Workers v. Foust*, 442 U.S. 42, 48–50, 99 S.Ct. 2121, 2125–2126, 60 L.Ed.2d 698 (1979). For that reason, a federal employee might reasonably choose to proceed in the Court of Claims alone, pursuing only the claim against the federal employer, with the thought that bringing a separate action against the union in the district court would not be sufficiently productive to justify the expense of the litigation.[1] Thus, once the format of these lawsuits by federal employees becomes established, the fragmentation to which plaintiff refers is likely to be minimized.

In any event, as noted above, we must deny plaintiff's motion on the ground that we lack jurisdiction over his claim against his employer.

### Reconsideration

▉ Through its opposition to plaintiff's motion requesting that this court assume pendent jurisdiction over the breach of collective bargaining agreement claim, the DLI has, in effect, asked us to reconsider our March 9, 1982 ruling that the federal courts have jurisdiction over damages actions brought by federal employees against their unions and their employers. We will construe the DLI's opposition as a formal motion for reconsideration.

In support of its position, the DLI cites *Columbia Power Trades Council v. United States Department of Energy*, 671 F.2d 325 (9th Cir. 1982), an opinion which was issued a few days after our March 9 order. There, the plaintiff union sued for declaratory and injunctive relief, seeking a writ of mandamus directing the Bonneville Power Administration to implement an arbitrator's award of a wage increase. The Ninth Circuit held that the district court was without jurisdiction to hear the case since, by the terms of Title VII of the Civil Service Reform Act of 1978, 5 U.S.C. § 7101 *et seq.* ("the Act"), the Federal Labor Relations Authority ("the Authority") had exclusive

---

1. Of course, in deciding the question of the federal employer's liability, the Court of Claims would first have to determine whether the non-party union had breached its duty of fair representation. *Cf. Clayton v. ITT Gilfillan*, 623 F.2d 563 (9th Cir. 1980), *aff'd in part, rev'd in part sub nom Clayton v. International Union, United Automobile, etc.*, 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981); *Smart v. Ellis Trucking Co., Inc.*, 580 F.2d 215 (6th Cir. 1978), *cert. denied*, 440 U.S. 958, 99 S.Ct. 1497, 59 L.Ed.2d 770 (1979). The Court of Claims would determine this only as a preliminary question. It would not be empowered to require the union to pay damages to the plaintiff, since the union would not be a party to the action. The Court of Claims would, of course, be able to award damages against the federal employer.

jurisdiction over the matter. Although the Ninth Circuit opinion contains broad language to the effect that the federal courts have no jurisdiction over federal labor relations matters, it does not squarely face the question whether the federal courts have jurisdiction over *damages* actions brought under the Act. As in virtually all of the cases decided under the Act up to the present time, the question before the court in *Columbia Power Trades Council* was whether the Act empowers the district courts to grant *injunctive* relief.[2] The courts which have considered that question have all properly concluded that the district courts lack such authority. However, for the reasons expressed in our earlier opinion, we are still persuaded that the federal courts have jurisdiction over damages actions brought by federal employees against their unions and their employers.

The duty of a union fairly to represent all members of the bargaining unit is inherent in the Act, just as it is inherent in both the National Labor Management Relations Act, 29 U.S.C. §§ 141 *et seq.*, and the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* As the Supreme Court has noted,

"Because '[t]he collective bargaining system as encouraged by Congress and administered by the NLRB of necessity subordinates the interests of an individual employee to the collective interests of all employees in a bargaining unit, *Vaca v. Sipes*, 386 U.S. 171, 182 [87 S.Ct. 903, 912, 17 L.Ed.2d 842] (1967), the controlling statutes have long been interpreted as imposing upon the bargaining agent a responsibility equal in scope to its authority, 'the responsibility and duty of fair representation.' *Humphrey v. Moore*, [375 U.S. 335,] . . . 342 [84 S.Ct. 363, 368, 11 L.Ed.2d 370]. The union as the statutory representative of the employees is 'subject always to complete good faith and honesty of purpose in the exercise of its discretion.' *Ford Motor Co. v. Huffman*, [345 U.S. 330,] . . . 338 [73 S.Ct. 681,

686, 97 L.Ed. 1048]." That this duty of fair representation under the NLRA may be judicially enforced was made clear in *Vaca v. Sipes*, 386 U.S. 171 [87 S.Ct. 903, 17 L.Ed.2d 842].

*United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 67 n.2, 101 S.Ct. 1559, 1562 n.2, 67 L.Ed.2d 732 (1981), quoting *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 564, 96 S.Ct. 1048, 1056, 47 L.Ed.2d 231 (1976). Thus, there was no need for Congress to write into the Civil Service Reform Act of 1978 a section specifically conferring upon the district courts the jurisdiction to hear breach of duty of fair representation cases brought by federal employees. The district courts already have jurisdiction under 28 U.S.C. § 1331 to hear claims that the duty of fair representation, which duty arises out of the Act, has been breached.

Plaintiff's claim that his federal employer breached the collective bargaining agreement likewise has "its own discrete jurisdictional base." *United Parcel Service v. Mitchell, supra*, 451 U.S. at 66, 101 S.Ct. at 1566. Such a claim is, in essence, one for breach of contract. *See Vaca v. Sipes, supra*, 386 U.S. at 183–84, 87 S.Ct. at 913. Since, in a non-diversity action, the federal courts lack jurisdiction over contract claims against private parties, Congress needed to create a specific jurisdictional grant whereby private sector employees could sue their employers for breaching a collective bargaining agreement. Congress did so in § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. In contrast, when Congress enacted Title VII of the Civil Service Reform Act of 1978, there was no need to create a new jurisdictional base in order to empower the federal courts to hear breach of collective bargaining agreement claims against federal employers. Under the Tucker Act, the federal courts already have jurisdiction over contract claims against the federal government. As noted in our earlier opinion, the federal courts are

2. *See also United States v. Professional Air Traffic Controllers Organization* (PATCO), 653 F.2d 1134 (7th Cir. 1981), *cert. denied*, 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 617 (1981);

*National Federation of Federal Employees, Local 1263 v. Defense Language Institute*, 493 F.Supp. 675 (N.D.Cal.1980); *Clark v. Mark*, Case No. 79–CV–777 (N.D.N.Y.1980).

thus empowered to entertain claims such as the one plaintiff has brought against the DLI—although the proper forum in the instant case is the Court of Claims and not the district court.

Citing *Yates v. United Soldiers' and Airmen's Home*, 533 F.Supp. 461 (D.D.C.1982), however, the DLI argues that the legislative history of the Act indicates that Congress intended to withhold jurisdiction over damages actions from the federal courts. In *Yates*, the district court held that the federal courts do lack such jurisdiction. In support of its holding, the district court noted that an early version of § 7121(c) of the Act was deleted from the final version of the statute. The deleted passage would have authorized any party to a collective bargaining agreement to seek enforcement of grievance or arbitration provisions in federal court. *See* H.R.Rep.No.1403, 95th Cong., 2d Sess. 286 (1978). In *Yates*, the court interpreted the deletion as evidence that Congress did not intend for the district courts to have jurisdiction over any federal labor relations matters. However, we believe that the deletion of the passage indicates only that Congress did not intend the district courts to have jurisdiction to grant *injunctive relief* under the Act. The deletion of the injunctive relief provision does not indicate any intent by Congress to deprive federal courts of jurisdiction to hear damages claims under the Act.

Nonetheless, the DLI argues that if we assume jurisdiction over damages actions, federal employees will simply convert every labor dispute into a damages action in order to bring suit in federal court. This, the DLI asserts, would defeat the purpose of the preemption of labor disputes by labor boards, which is to "shield the system from conflicting regulation of conduct." *Amalgamated Ass'n of Street, etc. v. Lockridge*, 403 U.S. 274, 292, 91 S.Ct. 1909, 1920, 29 L.Ed.2d 473 (1971). That argument is without merit in the present context. Damages actions are a recognized exception to the rule that jurisdiction over labor disputes should be vested exclusively in a labor board in order to avoid conflicting regulation. As the Supreme Court noted in *Vaca v. Sipes*,

A primary justification for the pre-emption doctrine—the need to avoid conflicting rules of substantive law in the labor relations area and the desirability of leaving the development of such rules to the administrative agency created by Congress for that purpose—is not applicable to cases involving alleged breaches of the union's duty of fair representation. The doctrine was judicially developed in *Steele* [*v. Louisville & N.R.Co.*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944)] and its progeny, and suits alleging breach of the duty remained judicially cognizable long after the NLRB was given unfair labor practice jurisdiction over union activities by the L.M.R.A. Moreover, when the Board declared in *Miranda Fuel* [Co., 140 N.L.R.B. 181 (1962), *enforcement denied*, 326 F.2d 172 (C.A. 2d Cir. 1963)] that a union's breach of its duty of fair representation would henceforth be treated as an unfair labor practice, the Board adopted and applied the doctrine as it had been developed by the federal courts. See 140 N.L.R.B., at 184–186. Finally, as the dissenting Board members in *Miranda Fuel* have pointed out, fair representation duty suits often require review of the substantive positions taken and policies pursued by a union in its negotiation of a collective bargaining agreement and in its handling of the grievance machinery; as these matters are not normally within the Board's unfair labor practice jurisdiction, it can be doubted whether the Board brings substantially greater expertise to bear on these problems than do the courts, which have been engaged in this type of review since the *Steele* decision.

*Vaca v. Sipes, supra*, 386 U.S. 180–181, 87 S.Ct. 911–912 (footnotes omitted). In the emerging field of public sector labor law, too, maximum consistency of regulation will be achieved if damages actions are heard by the federal courts, which have acquired considerable expertise in handling such cases during the period of nearly forty years in which they have entertained private sector breach of duty of fair representation actions.

The DLI goes on to argue that the federal courts' jurisdiction is superseded by the fact that the General Counsel of the Authority has unreviewable discretion to determine whether a formal complaint should be issued against a union or an employer charged by an employee with unfair labor practices. In the present case, the General Counsel refused to issue a complaint against the DLI. It did decide to issue a complaint against the union, provided that no settlement was entered into. Because the union subsequently did settle with the Authority—in an agreement which afforded no relief to plaintiff as an individual, but which instead established certain guidelines designed to prevent future abuses—no complaint was ever issued against the union by the General Counsel. The DLI argues that the unreviewable discretion of the General Counsel not to issue any complaint in the instant case strips this court of jurisdiction. We disagree.

■ In the context of private sector labor relations, the General Counsel of the National Labor Relations Board, like the General Counsel of the Federal Labor Relations Authority, has unreviewable discretion to decide whether to issue a complaint against a union or an employer. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 138–139, 95 S.Ct. 1504, 1510–1511, 44 L.Ed.2d 29 (1975); *Vaca v. Sipes, supra*, 386 U.S. at 182, 87 S.Ct. at 912. However, that fact does not preclude an employee in the private sector from bringing a damages action against the union and the employer. Indeed, the fact that the General Counsel of the National Labor Relations Board has unlimited discretion to refuse to issue a complaint is precisely why there is a need for a damages remedy against the union and the employer. The Supreme Court made this abundantly clear in *Vaca v. Sipes*:

> The collective bargaining system as encouraged by Congress and administered by the NLRB of necessity subordinates the interests of an individual employee to the collective interests of all employees in a bargaining unit. See, *e.g., J. I. Case Co. v. Labor Board*, 321 U.S. 332 [64 S.Ct.

576, 88 L.Ed. 762]. This Court recognized in *Steele* that the congressional grant of power to a union to act as exclusive collective bargaining representative, with its corresponding reduction in the individual rights of the employees so represented, would raise grave constitutional problems if unions were free to exercise this power to further racial discrimination. 323 U.S., at 198–99 [65 S.Ct., at 230]. Since that landmark decision, the duty of fair representation has stood as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law. Were we to hold, as petitioners and the Government urge, that the courts are foreclosed ... from this traditional supervisory jurisdiction, the individual employee injured by arbitrary or discriminatory union conduct could no longer be assured of impartial review of his complaint, since the Board's General Counsel has unreviewable discretion to refuse to institute an unfair labor practice complaint. See *United Electrical Contractors Assn. v. Ordman*, 366 F.2d 776, cert. denied, 385 U.S. 1026 [87 S.Ct. 753, 17 L.Ed.2d 674]. The existence of even a small group of cases in which the Board would be unwilling or unable to remedy a union's breach of duty would frustrate the basic purposes underlying the duty of fair representation doctrine.

*Vaca v. Sipes, supra*, 386 U.S. at 182–83, 87 S.Ct. at 912–913 (footnote omitted). Just as in the context of private sector labor relations, then, we must provide federal employees with some means of redressing their grievances against their unions and employers since these employees, their interests subordinated to the interests of the group, are subject to unreviewable decisions by the Authority not to prosecute their grievances.

For the foregoing reasons, the DLI's request that we reconsider our previous decision is hereby denied.

SO ORDERED.