**Walter A. WARREN,**
**Plaintiff-Appellant,**

v.

**LOCAL 1759, AMERICAN FEDERA-**
**TION OF GOVERNMENT**
**EMPLOYEES, Defendant-Appellee.**

No. 84–8377.

United States Court of Appeals,
Eleventh Circuit.

July 5, 1985.

Glenn Taubman, Springfield, Va., for plaintiff-appellant.

Stuart A. Kirsch, Am. Federation of Government Employees Fifth District Staff Counsel, College Park, Ga., for defendant-appellee.

Before KRAVITCH and CLARK, Circuit Judges, and PECK *, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge:

This case is before the court upon an appeal from the district court order granting the appellee's motion to dismiss for lack of subject matter jurisdiction. Appellant Walter Warren is a civilian employed by the Department of the Army at Fort McPherson, Georgia. Local 1759, American Federation of Government Employees, is the exclusive collective bargaining representative of a unit of civilian federal employees including Warren.

In April 1983, Warren was suspended without pay for five days based upon allegations of misconduct. He disagreed with the disciplinary action and invoked the contractual grievance procedures which had been negotiated by Local 1759 and his employer. After exhausting the initial grievance procedures, he asked Local 1759 to take his grievance to arbitration, but the union refused. Warren then filed an unfair labor practice charge with the Federal Labor Relations Authority ("FLRA") against the union. The FLRA Regional Director refused to issue a complaint, stating that the charge had been investigated and it did not appear that further proceedings were warranted. Appellant then appealed to the FLRA General Counsel, who affirmed the Regional Director's refusal to issue a complaint. In May 1983, Warren was again suspended; once more he went through the procedure outlined above. As before, the FLRA Regional Director refused to issue a complaint and the decision was affirmed by the FLRA General Counsel.

---

* Honorable John W. Peck U.S. Circuit Judge for the Sixth Circuit, sitting by designation.

Warren then initiated this litigation by filing a complaint in the United States District Court for the Northern District of Georgia, alleging that Local 1759 had breached its duty of fair representation by capriciously and with hostility refusing to take his grievances to arbitration because he was not a member of Local 1759. Federal court jurisdiction was predicated upon 28 U.S.C. § 1331. The district court dismissed Warren's complaint, holding that the court lacked subject matter jurisdiction because the FLRA had exclusive jurisdiction over the controversy. For the reasons set forth below, we affirm.

The sole issue before this court is whether, under Title VII of the Civil Service Reform Act (the Labor-Management and Employment Relation statute), 5 U.S.C. § 7101 *et seq.*, a federal employee can invoke the jurisdiction of the federal district courts to adjudicate a duty of fair representation action against the employee's exclusive bargaining representative. Title VII of the Civil Service Reform Act ("CSRA") explicitly governs labor-management relations in the federal sector. Section 7114(a)(1) imposes a duty of fair representation upon a labor organization which is the exclusive representative of the federal employees in its unit: "An exclusive representative is responsible for representing the interests of all employees in the unit it represents without discrimination and without regard to labor organization membership." In the present case, Warren contends that Local 1759 breached its § 7114(a)(1) duty of fair representation by failing to proceed to arbitration. Section 7116 sets forth actions which constitute unfair labor practices for purposes of the CSRA. As the district court noted, the breach alleged by Warren would constitute an unfair labor practice under § 7116(b).[1]

In § 7105 of the CSRA, Congress gives the FLRA the powers and duties to take necessary and appropriate actions to effectively administer the provisions of the CSRA. Section 7105 confers upon the FLRA the authority to conduct hearings and resolve complaints of unfair labor practices. Section 7118 requires the General Counsel of the FLRA to investigate charges of unfair labor practices and to either issue a complaint or provide the charging party with a written statement of the reasons for not issuing a complaint. The district court, quoting from *National Federation of Federal Employees, Local 1263 v. Commandant, Defense Language Institute*, 493 F.Supp. 675, 679 (N.D.Cal. 1980) ("NFFE"), noted that under the CSRA Congress explicitly empowers the federal courts to act in three instances:

First, it makes judicial review of final orders of the FLRA available only in the appropriate federal circuit court of appeals. 5 U.S.C. § 7123(a). Second, it provides that the FLRA may petition a circuit court of appeals for enforcement of its orders and for appropriate temporary relief of restraining order. 5 U.S.C. § 7123(b). Third, pursuant to § 7123(d), the FLRA, upon issuing an unfair labor practice complaint, may petition a federal district court for temporary injunctive relief. 5 U.S.C. § 7123(d).

The district court concluded that reading the CSRA as a whole shows that Congress intended for the statutory procedure to be deemed exclusive. Appellant, however, argues that federal courts have subject matter jurisdiction to hear duty of fair representation lawsuits brought by federal employees. Appellant states that prior to the enactment of the CSRA in 1978, under both the National Labor Relations Act ("NLRA") and the Railway Labor Act, employees have used the "general federal question jurisdiction" of 28 U.S.C. § 1331 to litigate duty of fair representation

---

**1.** 5 U.S.C. § 7116(b) provides in relevant part: For the purpose of this chapter, it shall be an unfair labor practice for a labor organization—
(1) to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter;

(8) to otherwise fail or refuse to comply with any provision of this chapter.

claims against their unions in federal courts. He contends that nothing in the CSRA, either explicitly or implicitly, evinces a Congressional intent to abrogate the federal employees' right to litigate duty of fair representation claims in federal courts.

Thus, our analysis first focuses upon the question of Congressional intent. Because Congress patterned the FLRA on the National Labor Relations Board ("NLRB") in many respects,[2] a review of judicial precedents of private sector law which had arisen under the NLRA is in order.

In the instant case, the district court found significant the fact that although Congress patterned the FLRA in many respects after the NLRB, Congress did not enact a provision in the CSRA that parallels § 301[3] of the LMRA. Section 301 provides in pertinent part:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties.

Thus, § 301 confers jurisdiction of the district court over suits based upon collective bargaining agreements in the private sector. The district court stated:

> In that Congress did not enact in the FLRA a provision analogous to Section 301 of the LMRA and because Congress explicitly empowers the federal courts to act in three situations applicable to this case, the Court declines to carve out an exception to the preemption doctrine as urged by the plaintiff.

In *Yates v. United States Soliders' and Airmen's Home*, 533 F.Supp. 461 (D.D.C. 1982), the court analyzed the legislative history of the CSRA and discussed the significance of the absence of a § 301 analogue:

> The failure of Congress to provide a clear jurisdictional grant to district courts over disputes involving public sector labor agreements is particularly telling when compared with the approach taken by Congress in the private sector....
>
> The Civil Service Reform Act of 1978 contains no provision analogous to § 301. Not only is the Act silent on the point, but the legislative record indicates that Congress did, in fact, consider and reject a proposed provision similar to § 301 when it enacted the Act. [NFFE, *supra*.], 493 F.Supp. 675, 681 n. 13 (N.D. Cal.1980).

533 F.Supp. at 464–5.

The court concluded "that the absence of a jurisdictional grant in the Act is a clear indication that Congress intended to bar actions to enforce collective bargaining agreements in the district courts." 533 F.Supp. at 463.

Similarly, in *Columbia Power Trades Council v. U.S. Department of Energy*, 671 F.2d 325 (9th Cir.1982), the court reached the same conclusion:

> The only provision made for judicial jurisdiction appears in 5 U.S.C. § 7123. An aggrieved party may appeal the Authority's action to a court of appeals, the Authority may petition a court of appeals for enforcement of its orders, and the Authority may seek an injunction in a district court after it has issued a complaint. At no point does the Act entitle a party to petition a district court for relief. Given the broad purpose of the Act to meet the special requirements of government, the leadership role of the Authority, and the limited role of the judiciary in this statutory scheme, it is manifestly the express desire of Con-

---

**2.** See *Columbia Power Trades Council v. U.S. Department of Energy*, 671 F.2d 325 (9th Cir. 1982); *National Federation of Federal Employees Local 1263 v. Commandant, Defense Language Institute*, 493 F.Supp. 675 (N.D.Cal. 1980).

**3.** Section 301, 29 U.S.C. § 185(a), was enacted in 1947 as part of the Labor Management Relations Act, 61 Stat. 156, which amended the NLRA.

gress to create an exclusive statutory scheme. (footnotes omitted)

533 F.Supp. at 463.

Appellant argues that Congress' failure to enact a § 301 analogue in the CSRA is irrelevant because the separate jurisdictional grant in § 301 has never served as the jurisdictional basis of a duty of fair representation claim. He cites the seminal case of *Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967), in which an employee with medical problems was discharged from a job requiring heavy work. The union took the grievance through the initial steps of the grievance procedure, but refused to proceed to arbitration. The employee then brought an action against union officials in state court. Before the Supreme Court, defendants made the argument, *inter alia,* that the state court lacked subject matter jurisdiction because the union's conduct was an unfair labor practice, and thus the action was within the exclusive jurisdiction of the NLRB. The Court held that the state court had jurisdiction over the action, citing "the unique role played by the duty of fair representation doctrine in the scheme of federal labor laws, and its important relationship to the judicial enforcement of collective bargaining agreements in the context presented here." 386 U.S. at 188, 87 S.Ct. at 916. Appellant maintains that under *Vaca,* the Supreme Court implicitly approved of a dual system in which employees can file unfair labor practice charges against the union with the NLRB, or they can sue for damages in federal court, independent of the NLRB's procedures. Appellant contends that Congress was aware of this dual system when it enacted the CSRA in 1978, and did not expressly reject it.

Appellant states that at the time Congress enacted the CSRA, federal courts had held that subject matter jurisdiction over private sector duty of fair representation claims is properly predicated upon 28

U.S.C. § 1337.[4] *Smith v. Local 25, Sheet Metal Workers,* 500 F.2d 741, 748 (5th Cir. 1974); *Mumford v. Glover,* 503 F.2d 878, 882–83 (5th Cir.1974). Both *Smith* and *Mumford,* however, are distinguishable from the present case. *Mumford* involved a claim that the union had breached its duty in the administration of a pension plan; there was no underlying employer action in violation of a collective bargaining agreement. Similarly, *Smith* did not involve an allegation of an underlying violation of a collective bargaining agreement. In both *Mumford* and *Smith,* the court found jurisdiction under 28 U.S.C. § 1337 because the NLRA and the Railway Labor Act, respectively, were laws regulating commerce. Because no violation of a collective bargaining agreement was involved, there could be no § 301 jurisdiction. The court in *In re Carter,* 618 F.2d 1093, 1104 (5th Cir.1980), summarizes this point succinctly:

> When the allegations assert a breach of the duty of fair representation without a corresponding breach of the collective contract, federal question jurisdiction cannot be grounded on Section 301.

Regardless of Appellant's failure to name the employer as a party to this action, there is an underlying allegation that the breach of the duty of fair representation involved a breach of the collective bargaining agreement by the employer. Appellant's complaint stated: "Local 1759 has entered into a collective bargaining agreement with plaintiff's employer as a result of its exclusive representation of the bargaining unit" and "Local 1759 owes plaintiff a statutory duty to fairly represent plaintiff in all aspects of its administration of the collective bargaining agreement, pursuant to § 7114(a)(1)." If Appellant's action had been in the private sector, § 301 would have been the jurisdictional basis because the action involved both the duty

---

**4.** 28 U.S.C. § 1337 states:
The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

Because Appellant alleges jurisdiction under 28 U.S.C. § 1331, we do not reach the issue of whether the CSRA is an act regulating commerce within the meaning of § 1337.

of fair representation and breach of collective bargaining agreement claims. *Carter, supra; see also Seymour v. Olin Corp.*, 666 F.2d 202 (5th Cir.1982). Because Congress considered and rejected a § 301 parallel in the CSRA, we conclude that Congress did not intend for federal courts to have jurisdiction over such duty of fair representation claims by federal employees.

The cases of *Karahalios v. Defense Language Institute*, 534 F.Supp. 1202 (N.D. Cal.1982) and *Karahalios v. Defense Language Institute*, 544 F.Supp. 77 (N.D.Cal. 1982) (*Karahalios II*) support Appellant's position. In those cases, the plaintiff, a federal employee, brought action against the federal employer and the union, alleging unfair representation, breach of the collective bargaining agreement, and due process and equal protection violations. The district court held that it had subject matter jurisdiction of the employee's claim against the union for breach of the duty of fair representation under 28 U.S.C. § 1331. *Karahalios* at 1206–7; *Karahalios II* at 79.

Appellee argues that the court in the *Karahalios* cases relied on two faulty premises: first, the alleged lack of an explicit duty of fair representation provision in the CSRA and second, the inability of the FLRA to provide individual relief to employees aggrieved by a breach of the duty of fair representation. Appellee is correct in its assertion that the court in *Karahalios* erroneously stated that there is not an explicit duty of fair representation provision in the CSRA; actually, the CSRA provides for an explicit duty of fair representation by a union to federal employees which it exclusively represents in § 7114(a).[5] In contrast, neither the NLRA nor the Railway Labor Act explicitly impose a duty of fair representation; an implied duty, however has been established through court and NLRB decisions. *See Vaca, supra; Steele v. Louisville and Nashville Railroad*, 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944); *Tunstall v. Brotherhood of Locomotive Firemen and Enginemen*, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187 (1944); *Miranda Fuel Co.*, 140 NLRB 181.51 LRRM 1584 (1962). Appellee also correctly asserts that the concern expressed by the court in *Karahalios* that the FLRA would be unable to provide relief to federal employees aggrieved by a breach of the duty of fair representation is unwarranted. Section 7118(a)(7) provides that upon finding an unfair labor practice, the FLRA shall issue an order requiring reinstatement of back pay or such other relief as will effectuate the purpose of the statute.[6]

Based upon the foregoing analysis, we hold that Congress conferred exclusive jurisdiction over a federal employees' duty of fair representation claim in the FLRA. Accordingly, the decision of the district dismissing Appellant's complaint is AFFIRMED.

---

**5.** Appellant maintains that unions have both an implied and an express duty of fair representation under the CSRA. He contends that the judicially enforceable duty of fair representation arises out of 5 U.S.C. § 7111 (Congress' grant of exclusive representation) and *not* out of the explicit provision of 5 U.S.C. § 7114(a)(1). We do not agree with Appellant's contention that the duties enumerated in § 7114(a)(1) are "irrelevant" here. Rather, we agree with Appellee that the failure of the court in *Karahalios* to recognize the explicit duty of fair representation undermines the validity of the conclusion reached in that decision.

**6.** Appellant cites *Broida, Fair Representation for Federal Employees: An Overview*, Federal Bar News and Journal, Vol. 30/No. 11, page 440, 442 (Nov.1983), in which it is stated that the FLRA enforces duty of fair representation claims "less vigorously than its private sector counterpart." In view of the numerous FLRA cases, cited in Appellee's brief, in which relief was granted against the union for breach of the duty of fair representation, we are unpersuaded by Appellant's argument that the FLRA lacks zeal in prosecution of duty of fair representation claims.