711 F.2d 8
 STATE OF NEW YORK DISTRICT ATTORNEY INVESTIGATORS POLICE
BENEVOLENT ASSOCIATION, INC., Plaintiff-Appellant,
v.
William C. RICHARDS, in his capacity as Presiding Officer of
the Suffolk County Legislature, and David J.
Gilmartin, County Attorney of Suffolk
County, Defendants-Appellees.
 No. 1054, Docket 82-7965.
 United States Court of Appeals,
Second Circuit.
 Argued March 25, 1983.
Decided June 28, 1983.
 
 Alexander T. Singer, Brooklyn, N.Y., for plaintiff-appellant.
 Theodore D. Sklar, Asst. County Atty. of Suffolk County, Hauppauge, N.Y. (David J. Gilmartin, County Atty. of Suffolk County, Hauppauge, N.Y., of counsel), for defendants-appellees.
 Before OAKES, CARDAMONE and WINTER, Circuit Judges.
 CARDAMONE, Circuit Judge:
 
 
 1
 The sole question presented on this appeal is the propriety of the district court's dismissal for lack of subject matter jurisdiction of a complaint alleging a cause of action under 42 U.S.C. § 1983.
 
 
 2
 In 1979 the Legislature of Suffolk County, New York, probably responding to complaints made by the public of harassment by police officers soliciting money, enacted Local Law No. 2-1979 entitled "Local Law Prohibiting Certain Solicitation by Police and Police-Affiliated Organizations." While the Suffolk County statute has an ostensible purpose of protecting the public generally and, in doing so, forbids telephone solicitation by all police groups and their professional fundraisers, appellants assert that the operation, language, and history of the statute indicate that it also favors and may have been intended to favor the speech and fundraising activities of local police interests. By prohibiting telephone solicitations and greatly restricting mail solicitation (requiring written approval of the text by the Commissioner of Police or his designee), the statute disfavors the two chief means by which out-of-county organizations could inexpensively contact potential local donors. Also, as originally enacted, section 3(e) of the statute would have forbidden outsiders (organizations less than 90% of whose members are Suffolk County residents) to engage in any form of solicitations whether by phone, mail, or door-to-door or through the mail. These features of the statute unduly favored the speech of local interests and silenced outsiders. In fact, the Suffolk County District Court struck down section 3(e) because it "disadvantage[d] non-residents with no apparent necessity for the proper regulation of Suffolk County police officers."
 
 
 3
 Appellees claimed that the statute was enacted in response to complaints from citizens who felt harassed by police solicitation, but the district court, testing the constitutionality of the Suffolk statute upon remand, must also view the County's claimed purpose in light of the potential for harassment by local police that would have been permitted under the originally enacted statute. In other words, "the exceptions to the general prohibition are of great significance in assessing the strength of the government interest." Metromedia Inc. v. San Diego, 453 U.S. 490, 520, 101 S.Ct. 2882, 2899, 69 L.Ed.2d 800 (1981). Surely Suffolk County citizens do not feel less harassed when local police do the solicitation than when outside law enforcement agencies do so; if anything, the risk that citizens will feel that donations to the police union are made under pressure is increased when only local police solicit donations because outsiders have, or at least may be perceived to have, little or no protection to offer.
 
 
 4
 It is this misfit between the County's stated purpose and the regulation as adopted that suggests that local police interests may have been to a certain extent behind the statute's parochial structure. The record before us tends to bear out this suggestion, though on remand more, of course, may be proffered. At the September 2, 1981 meeting of the Suffolk County Legislature's Public Safety Committee, Committee Chairman Wehrenberg recalled not only that he authored this legislation to "protect the citizenry" but that "at the time this law was drawn up, local police were in attendance to offer suggestions and were in agreement with the content." The president of the Suffolk Policeman's Benevolent Association, Eugene Greaves, went so far as to say that the Suffolk PBA "unilaterally approved this legislation." He said that the union favored the statute because police have better things to do than to solicit funds, but the statute did not prevent local police from soliciting funds. It thus comes as no surprise to read Mr. Greaves otherwise rather astonishing admission that "[t]his law was worked out among all of the police groups in the County [who] supported it and it was passed" (emphasis added). Nonetheless, Section 3(a) of the law completely bars police, law enforcement affiliated organizations and professional fundraisers acting on behalf of law enforcement affiliated organizations from soliciting over the telephone. Sections 3(b) and (c) prohibit similar solicitation by mail and in person respectively, unless prior approval is obtained from the local Police Commissioner or his agents. The law provides no guidelines for the Commissioner or his agents to use in ruling on requests to solicit by mail or in person.
 
 
 5
 Plaintiff State of New York District Attorney Investigators Police Benevolent Association, Inc. (Investigators Association) is a not-for-profit organization which represents police detective investigators in New York State. It publishes a monthly newspaper called The Empire State Investigator which is distributed to its members, prosecutorial offices, state and local legislators, Police Benevolent Association presidents, and "subscribers." "Subscribers" are individuals who purchase an advertisement in the newspaper in exchange for a three month subscription. These advertisements are sold over the telephone by an advertising agency employed by the Investigators Association.
 
 
 6
 On July 13, 1982 plaintiff brought an action under 42 U.S.C. § 1983 in the United States District Court for the Eastern District of New York. Claiming that the law unconstitutionally violated its First and Fourteenth Amendment rights to freedom of speech and of the press, plaintiff sought an injunction to prevent enforcement of the law by defendants William C. Richards, in his capacity as Presiding Officer of the Suffolk County Legislature, and David J. Gilmartin, County Attorney of Suffolk County. The district court promptly granted a temporary restraining order pending a hearing on the issuance of a preliminary injunction. On October 21 defendants moved under Fed.R.Civ.P. 12(b)(1) to dismiss the complaint for lack of subject matter jurisdiction. At a hearing held on November 17 the court below entertained argument on defendants' motion and dismissed plaintiff's complaint without reaching the merits of whether a preliminary injunction should issue. Plaintiff appeals this order of dismissal.
 
 
 7
 The test for determining whether federal jurisdiction exists is whether the alleged cause of action is "so patently without merit " as to justify dismissal for lack of jurisdiction, or stated another way, whether the right claimed is "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." Duke Power Co. v. Carolina Environmental Study Group, Inc., 438 U.S. 59, 70-71, 98 S.Ct. 2620, 2628-29, 57 L.Ed.2d 595 (1978) (quoting Hagans v. Lavine, 415 U.S. 528, 542-43, 94 S.Ct. 1372, 1381-82, 39 L.Ed.2d 577 (1974) and Oneida Indian Nation v. County of Oneida, 414 U.S. 661, 666, 94 S.Ct. 772, 776, 39 L.Ed.2d 73 (1974). In deciding the issue of jurisdiction it is not necessary to determine whether the cause of action is one on which the plaintiff could actually recover. Duke Power Co., 438 U.S. at 70, 98 S.Ct. at 2628.
 
 
 8
 Judged against this standard federal jurisdiction exists in this case. The complaint makes numerous references to an abridgement of plaintiff's right to freedom of speech. Additionally, it sets forth facts indicating that the Investigators Association was told it would not be permitted to sell advertising space, had to apply for a permit to solicit, and was denied such a permit in a decision made without reference to any applicable standard governing the exercise of the Police Commissioner's authority. See generally Hynes v. Mayor and Council of Oradell, 425 U.S. 610, 616-22, 96 S.Ct. 1755, 1758-61, 48 L.Ed.2d 243 (1976); Lovell v. City of Griffin, 303 U.S. 444, 450-53, 58 S.Ct. 666, 668-69, 82 L.Ed. 949 (1938).
 
 
 9
 Defendants assert that the facts set forth in the complaint do not support plaintiff's claim of an infringement on its right to freedom of the press because the law in question does not prevent plaintiff from distributing its newspaper. Examination of the local law reveals, however, that it might well prevent plaintiff from exercising its right to freedom of speech by foreclosing its ability to solicit advertisements over the telephone and potentially foreclosing its ability to solicit advertising by other means. See Central Hudson Gas & Electric Corp. v. Public Service Commission, 447 U.S. 557, 561-66, 100 S.Ct. 2343, 2348-51, 65 L.Ed.2d 341 (1980); Village of Schaumburg v. Citizens for a Better Environment, 444 U.S. 620, 100 S.Ct. 620, 63 L.Ed.2d 73 (1980). Moreover, the law has been applied in such a manner as to completely bar plaintiff's attempts to express itself by soliciting advertising. In addition, the statute indirectly impinges on the distribution of plaintiff's newspaper because "subscriber" distribution is based upon the sale of advertising, which the law directly curtails. Thus, enforcement of the statute could give rise to a violation of plaintiff's right to freedom of the press as well as its right to freedom of speech. See Lovell v. City of Griffin, 303 U.S. at 450-52, 58 S.Ct. at 668-69.
 
 
 10
 Plaintiff's complaint, regardless of its merits, plainly is based upon claims of constitutional violations supported by facts which at this stage of litigation must be accepted as true. Whether or not plaintiff will ultimately succeed in establishing a right to relief, the federal district court unquestionably has jurisdiction to entertain this case.
 
 
 11
 Therefore, we reverse the order dismissing the complaint and remand the case to the district court for it to conduct a hearing on the propriety of granting plaintiff a preliminary injunction and for other proceedings consistent with this Opinion.